Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. God save the United States and this Honorable Court. Good morning we're happy to have you with us even just on the phone. We're happy to hear argument in our first case Aarow v. Hartford Light of Hartford Fire Insurance Company and Harper Construction Hartford Fire Insurance Company and Harper Construction Company. Counselor you can proceed. Thank you Your Honor. Good morning and may it please the court my name is Eli Robbins and I represent Plaintiff Appellant Aarow IET LLC. With me on the phone is my co-counsel Adam Harrison. We're asking this Honorable Court to reverse the trial court's dismissal of Aarow's case. We believe that the dismissal of Aarow's breach of contract claim against Harper was an error because it was based on an improper and incorrect finding of facts. We also believe that the dismissal of Aarow's Miller Act case against Hartford was an error because it was done sua sponte without prior notice or opportunity to be heard and was based on an inaccurate understanding and erroneous application of the law. The trial court error by making factual findings at the motion to dismiss stage of the case. It's well established that when considering a motion to dismiss the trial court is to assume the truth of all matters asserted a complaint. In Edwards versus City of Goldsboro the Fourth Circuit held that when considering a 12b6 motion the trial court is not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Yet that's precisely what the trial court did in this case. Trial court resolved contests surrounding the facts by determining that Aarow's claim was a delay claim. Trial court then determined both the merits of Aarow's claim and the applicability of Harper and Hartford's defenses and dismissed Aarow's amended complaint. This was improper. The trial court also erred because the factual finding which it did make that Aarow's claim was a delay claim was incorrect. Mr. Roberts, this is Judge Floyd. Let me ask you a question about that. Your exhibit C states very clearly that the enumerated calls are for disruption or not for Yeah, I believe the trial judge was wrong in reading that exhibit and I'll address that in a second, Your Honor, but it also states that it doesn't include costs for delay. So the same exhibit C says that this proposal does not include any cost amounts for extended contract durations, overtime, unforeseen conditions, changes in the sequence of work, acceleration, disruptions, and impacts, unless specifically noted otherwise. Extended contract durations, overtime, unforeseen conditions, those are all delayed claims. So the same notice, I apologize, the same REA that excludes disruption also excludes delay. So we believe that the court was erred in considering that document because it was not a document upon which the claim was based. The Fourth Circuit in Goins said that the court can consider a document that's attached to the complaint if the complaint, if a document is a document upon which the claim is based. If it's essential to the complaint, then the court can consider it. But if it's not a document upon which the claim is based, then it's inappropriate for the court to consider it. And the court in Goins also discussed the numerous reasons why a complaint, not all of which relate to either the truth of the document or whether the document is essential to the complaint. In this case, we attached the document to the complaint simply to show that we asserted a demand upon Harper for payment of our claim, which was denied. And that's specifically stated in complaint paragraph 30, and that's the only reference to the REA in the entire complaint. So we do believe that the did not take the Fourth Circuit's guidance in Goins into account, perhaps misunderstood the document, which I'll discuss in a minute, and determined based on that document that Arrow's claim was a delay claim when in fact it was not. Now, Mr. Robbins, it's always been my understanding that the party that puts in, attaches the document to the complaint vouches for it in a way. And so you take it. Now, you have another argument about whether what the court took from it was correct. But I think that the court relying on the document, I think that's a hard road to hoe for you. And I haven't heard you, never read you anything you've said that convinced me otherwise. So maybe you want to go on to, and you document was. Okay, and I appreciate, I appreciate the question, Your Honor. So this document is a change notice. It's alternatively referred to as an REA, a request for equitable adjustment to the contract for additional costs that Arrow incurred on the project. The additional costs that Arrow incurred on the project were disruption costs. And disruption and delay costs are different. Delay costs relate to the additional costs that are incurred as a result of the extension of time on the project. So for example, delay costs could include additional overhead, equipment, standby or rental costs, wage escalation, where the wages paid to laborers increased due to the passage of time, or material price escalation. I'm sorry, I think the problem with that argument is, isn't there a fair amount of laws sort of discussing the non-bright lines between delay and disruption costs? There is, Your Honor, that's correct. And that's a reason, that's kind of a hard argument for, did you make the argument to the district judge that this document plainly said it was one or the other of those things, and that you had further documents to prove the kind of cost that you think you are entitled to? So we did not make the argument that the document plainly says one thing or the other, either delay or disruption, but we did make the argument that it was that the claim sought disruption damages because of the nature of the claim and because of the way that it was computed and the items that are included in the claim. So the court will note that the items included in this claim are not delay items, they're not time-based costs. But you and I have just been through the fact that there seems to be a disarray about exactly what the line is between these two kinds of costs. So you, was there a proffer to the district court that we have documents that, or witnesses will substantiate our claim to the kinds of costs that we, to which we are entitled? I don't know whether there was a proffer to the district court, to the district court about that, but Your Honor, this is a motion to dismiss, it's not a motion for summary judgment. So even the consideration of what this claim is depends on the facts underlying it, and I think Your Honor is sort of highlighting that by asking whether or not there was a proffer made with respect to evidence. That's not what the standard is on the motion to dismiss. The standard on the motion... Were you counsel in the district court? I was, Your Honor. The standard on a motion to dismiss is whether or not the complaint is legally sufficient. The plaintiff is not supposed to get into the merits of the claim, or even whether or not the plaintiff may or may not have a chance to win. If the complaint is legally sufficient, then the complaint should not be dismissed. On summary judgment, you know, that's when it's appropriate to determine whether or not this is a delay claim, or it's a disruption claim, or it's a hybrid claim, or something along those lines. But not at this stage. A proffer doesn't determine anything. It just tells the court what you have. But your claim here is that you pled it in the complaint, right, your entitlement to this. You said you had these damages, and what was your purpose of attaching this document fee? So in Complaint Paragraph 30, we attach that we state specifically that we're attaching the document in order to show that we demanded compensation for these costs. The costs that are separate. The cost to which you're entitled, or the cost to which you're not entitled? The cost to which we believe we're entitled. But I thought that your claim, or your argument to us, is this document does not include an outline of the cost to which you are entitled. I believe the document computes costs to which ARA believes that we're entitled. It does not include delay damages in this document. Okay, you think you're entitled to both delay costs and to disruption costs. Is that right? No, that's not right, Your Honor. If we were... What do you think you're entitled to? We believe we're entitled to disruption costs. If we had delay costs on this project, then we would have, we would not have delay costs on the project, and we're not seeking compensation for delay costs on this project. All we're seeking compensation for is the additional costs we incurred because we had to do this project in an inefficient and non-productive manner. And those are disruption costs. Those are not delay costs. So you maintain that Exhibit C is all disruption costs? Delay costs? No, it's all disruption costs, Your Honor, and we went... Then why was it improper for the District Court to consider it? Well, it wasn't improper for the District Court to consider it for what it was, but it was improper for the District Court to take a look at this document. And as Your Honor is sort of alluding to, there is a dispute as to what this document is and make a factual finding that this document is in fact a delay claim, that this document is in fact not a disruption claim, and then proceed to dismiss the case based on the no damages for delay costs. Okay, well, when you put it in your complaint, when you paragraph the complaint's disruption costs, is there suggestion that they are listed somewhere else or that you have some record of them or anything? Did you say that in response to the District Court? I don't know that we were required to plead that we have... I take your point on that, but did you is what I'm asking you. We told the District Court, I believe, we told the District Court that these were disruption costs and that these costs were substantiatable. As a matter of fact, Your Honor, prior to the hearing on the motion to dismiss, we have produced an expert report to the cost, not the cost that we have in the complaint, a lower number, but we did substantiate a significant claim for disruption that was with an expert. But again, this is a motion... The expert report, this is Judge King, is that expert report in this record? It's not in the record, Your Honor. Again, this is a motion to dismiss, not a motion for summary judgment. I understand, but you're arguing about the expert report, and I didn't think it was in the record. The judge was also concerned that you bypassed the principle, right? The judge was concerned that we initially bypassed the principle, and we'd love to bypass the principle, and we believe that the judge was wrong. You went right after the surety. Correct, as we're entitled to do under the Miller Act. The Miller Act does not require us to include the principle in our complaint, and the It is, Your Honor. It is. And the Miller Act... I'm sorry. Does Judge Tranga not understand that legal principle? I don't know what Judge Tranga understood or did not understand. I do know that Judge Tranga's initial instinct was that the principle and the surety, the liability of the principle and the surety are coextensive, and that the surety cannot be liable for something which the is not liable, and we briefed cases or we showed Judge Tranga cases in the original motion to dismiss that stood for the opposite position, that under the Miller Act, the liability of the surety and its principle are not coextensive, and Judge Tranga concluded the hearing on the motion to dismiss by saying that he needed to take a look at those cases because that's not what his The Ninth Circuit in Walton said specifically what the conditions of the Miller Act are, and it says... How about the Fourth Circuit in some cases? Has the Fourth Circuit explained what those requirements are? I'm unaware of a case in the Fourth Circuit that specifically explains what the requirements of the Miller Act are. I think that this is the case for the said it was settled, we don't have any precedent, right? Yes, your honor, I got a I got a chime that my time is up, but can I answer the question? Yes, certainly. So there is no Fourth Circuit precedent with respect to this particular issue that I'm aware of. The Ninth Circuit in Walton is pretty well accepted across the country. There aren't any other cases saying any, you know, that the express terms of the Miller Act, the subcontractor's right of recovery on a Miller Act payment bond is conditioned on the passage of time from completion of work or provision of materials. That's it. Judge Floyd, do you have any further questions? No, no ma'am. If there are no further questions, I'd like to reserve the remainder of the time for rebuttal. I just want to be sure. Judge King, do you have any Thank you. Okay, well, I imagine you have to rebuttal. We'll hear from you again. Thank you. I do, your honor. Your honor, this is Michael McNamara. May I proceed? Yes, sir. Please do. Thank you. May it please the court. I'm Michael McNamara. I represent Appellee Harper Construction and I'm arguing on behalf of both appellees. I can appreciate Judge Moss. It's quite a tongue twister with Harper Construction and Hartford. For me, anyway. I struggled with it, too, for sure. I'd like to just pick up where Mr. Robbins left off. There is precedent in the Fourth Circuit on this point. That's the Woodington case, which we briefed. And the Woodington case does actually say very clearly, you know, it cites the Miller Act, which has sort of changed around the edges, but in material form hasn't changed on this point. And that is that the Miller Act, as construed by the Fourth Circuit in Woodington, had to evaluate when a subcontractor had a claim how to measure how much the subcontractor was entitled to. And the act at that time said that the subcontractor was entitled to, quote, sums justly due, end quote. And the Fourth Circuit had to determine justly due as measured by what and determine that the answer was measured by the subcontract. The act has been slightly amended now. So now the Act allows a subcontractor to prosecute for the final execution and judgment for the amount due. So it's not sums justly due. Now it's the amount due, but the principle is the same. Mr. McNair, this is Judge Floyd. The Squid, in this case, says it's a circuit split. Who are we in conflict with, based on the Woodington case? Yeah, I think that refers to the Walton v. Westar engineering case that Mr. Robbins was just talking about out of the Ninth Circuit. And there was actually a dissent in that case. It was a two to one decision. And that case discussed the Woodington case. And the dissent argued that under Woodington, the Ninth Circuit should make the sureties liability coextensive with the principles. So the, I mean, I think the, let me just refer to one point that we raised in our response brief that I was looking for whether, whether Arrow replied to it or addressed it in our reply brief, because it, it goes right to Woodington and to a question that Judge Trenga asked on the motion to dismiss the original complaint. So Judge Trenga formed a hypothetical in which he said, you know, what if a subcontractor is out there doing excavation and decides to dig some ditches that were not called for in the contract and thus incurs costs on the project? Can the subcontractor recover from the surety for that, even though it wasn't part of the contract? And so the principle doesn't owe it. And Mr. Harrison representing Arrow at that hearing said, yes, it can. And I posed a similar hypothetical in our response brief in which I said, you know, if the principle as articulated by Arrow is correct, that under the Miller Act, the subcontractor is entitled to all costs incurred on the project. What, what enforceability is there to the fixed price of the subcontract? So here, when the subcontract was adjusted by change orders, it was about $8 million. There's no allegation that, that any penny of that $8 million wasn't paid. So there's been a cost overrun and now Arrow has spent, you know, 10 or $11 million. Under Arrow's reading of the Miller Act, I believe it would be entitled to all 10 or $11 million. In other words, the fixed price of the subcontract gets thrown out the window as against the surety because it's, because the Miller Act just says they get their costs. And that's Arrow's reading. I think our reading is consistent with the Fourth Circuit decision in Woodington that no, the Miller Act says that the subcontractor gets the amount due as measured by the subcontract. And here that would be $8 million. We go back to the complaint and the, the exhibit. I'm not sure I understand why the REA demonstrates that there was not prior written notice. They pled that they gave you notice. They pled that they gave us notice. Proper notice. They're entitled to the pleading, their well pleaded facts, right? Yes. I guess the one thing that I just don't want to leave unsaid, Your Honor, they allege in their reply brief, or they cite in their reply brief to statements that counsel made at oral argument that there were 90 written notices that obviously can't be considered. I think Judge Tranga didn't consider it. I don't think this court could either. Well, Judge Tranga has to, and you have to, and we have to consider what they pled in their complaint. Absolutely. And they pled that they gave prior written notice as required. I don't see anything that, and if that's so, then they complied with their allegations, state a claim there, right? But I don't think they actually pled prior written notice. I think they said notice. Did they say it complied with the requirements that were to be made? No. No. Okay, what's the paragraph in the complaint? I wish I were faster to it, Your Honor, because I was looking for it as you said that. All right, I'll look for it. You can go on and talk about what you want to talk about. So what they did, Your Honor, they discredited our... Mr. McInerney, Judge King, I'm concerned somewhat that Judge Tranga, I think, granted a 12B6 motion that was never made, then he dismissed this thing when there had been no motion made. And you're referring to the claim against Harper, because obviously, I'm sorry, there you go again, Hartford, because Harper clearly made a 12B6 motion. And we would concede that Hartford did not, and we would view that as... Hartford is the surety. Yes, Your Honor. And maybe it would be easier if we just referred to the surety. So they got a dismissal and didn't make a motion. Yes, I think that's correct. I think Judge Tranga clearly indicated... Normally, you got to give a plaintiff a notice of a 12B6 motion or something, don't you? Yes, that would be the normal course. I think they were put on notice at the oral argument when Judge Tranga indicated that he thought that they had made a motion, which I think... But they had not made a motion. You are correct. They had not made a motion. That is correct. No motion was pending, but if it was granted, then the case was thrown out. And if the case against Harper... We don't have appeals from that kind of thing very often. That's unique in this case. Well, it's my first one as well, Your Honor. But I think it was still the right call here, because if there's no claim against the principal, then there's no claim against the surety. And so I think it would be a waste of judicial resources to send it back just to go through the motion of having the surety then file that motion and say there's no claim against the principal. But you're correct about what happened below. I do want to... They haven't made a motion under 12B6, Your Honor, to throw out Harper. I did not, nor did counsel for Arrow. And I think that would have been their point to make. And I think Judge Tranga invited that at the end after he had announced what he was going to rule. And he said, is there anything else? And he paused, looked around, and no one said anything. And then entered the order later that day, and Arrow never piped up and said, wait a minute, there's been no motion by the surety. Nor did Arrow, for that matter, file a motion seeking reconsideration to say, hey, Your Honor, there was no motion pending, which could have been cured quickly if it had. I'd like to return to Judge Mott's point about the notice. I mean, I think we... They are clearly aware that they have a problem with notice. And they danced around it in their pleading. And I think that pleading was... I think they were trying to be as accurate to the facts as they could, knowing that there had been no written notice. And I guess I should be careful because obviously the court is only testing the pleadings, but... Correct. And you reminded me of that. That's what we're testing, is the pleadings. Just testing the pleadings. Judge Tranga didn't make any factual findings, and there's no res judicata that attaches because this is a 12th v. 6 motion. I think it would be different if it had been a 12th. He has no power to make factual findings at this stage of the proceeding. Correct, correct. So all he did was he said that the allegations that were in the complaint together with the exhibits didn't state a claim. And that's the end of it. There's no res judicata of any sort. But I think what happened here, Judge Motz, to go back to your point, the Exhibit C is a very clear written notice. And it really calls out the absence of any prior written notice because now with Exhibit C we have the time. It sets forth the dates that the alleged offenses occurred, and it also sets the date when the written claim submission occurred. So now we know that it's in writing and when it was given. And I think it goes back to the exhibit prevails rule, and it's almost similar to the specific prevails over the general. And in the specific they're very clearly saying they submitted a late written notice. And in their allegations all they say is that they gave notice, that they notified Harper. But they don't say what is clearly required by the contract, that the notice was in writing and was timely. And so I think it was correct. Well, but the exhibit prevails rule applies to every incident of conflict between an exhibit and the complaint. Well, it certainly does. Or does it apply only when the exhibit negates the allegations in the complaint? And that's my point. I'm not so sure that this exhibit negates the allegations in the complaint. I mean, I guess I don't understand why they put it in, but there are lots of things lawyers do that I don't understand. But their submission to us is that it doesn't negate their claim. And that's what they're pleading, that they did suffer damages that are compensable. So I don't know. I mean, it's fine for you to say, well, they can just refile a complaint. But they say that this complaint is enough. And what we judge is whether the complaint before us is enough, not whether it's the best complaint. You know? Yeah, of course. But let me make one point along those lines, and I think this is critical. There were two independent bases from Exhibit C to dismiss under Rule 12b-6. And either would allow the trial court's decision to stand. The first was that Exhibit C was late notice, so they had not submitted timely written notice under the subcontract. The second is that the damages set forth in Exhibit C, which very clearly is what they're claiming. I mean, the dollars match up to the quantum add up to the dollar, were barred by the subcontract terms. And so even if you were to find, Judge Motz, that the general allegation that the subcontractor gave notice was sufficient, if the damages claimed in that complaint are barred by the subcontract, it doesn't matter. And I think you're really hard-pressed. And, you know, I think counsel's doing his best job. But if you look at Exhibit C and turn to page 113 of the record, it calculates delay days and delay costs. It says it's not the entire delay. And, you know, Mr. Robbins referred to where the form on which the REA is created, it says that this is, you know, not for disruption. And I think what all that means is, and if you read it in context, I think what you'll see is that the form is just saying, we might submit something else later, and it might fall into one of these laundry lists of categories. So on page 110 of the record, they say, you know, this does not include cost amounts for extending contract durations over time, unforeseen conditions, changes in the sequence of the work, and it goes on and on and on. That's just a form which is trying to reserve their rights to submit something else later. But in terms of what they do submit in Exhibit C, it's very clear. Well, maybe that means that they don't – but, see, you want us to go beyond where we are in the 12B6 motion. Okay, maybe that doesn't prove what they have to prove, and they have to come up with this later. But what we're doing is looking at what they're alleging. Well, I think what they allege here is a delay claim. I don't see how it could be anything else. Right. You say, look at what they submit in support of that. Those aren't proper damages for this. And so I just – I think you may prevail, but it's pretty early in the game right now. So I think the point here, and I think the point on review of a 12B6, you know, a decision on a 12B6 is merely to say, does this claim state a claim, yes or no? Right. And if it does, they're allowed to go forward, and that's the standard. And I think what Judge Trenge did is he looked at this delay claim, and he looked at the contract, which is Exhibit B, and he said that doesn't state a claim because the claim that it does state, the damages it does seek, are very clearly barred by the contract. Okay, what if there were no exhibits? Would the claim be sufficient? No. No. Why not? Because these documents still exist, and they're non-controversial. There's no dispute if they are what they are. But they wouldn't be before the district court, right? Because we're still on 12B6. You're absolutely correct. And ordinarily the court looks at the four corners of the complaint, but if you read Goins, Goins actually discusses extensively circumstances where courts on a 12B6 motion can consider documents that are outside. And let me just get the language from Goins, because we may consider a document. This is from Goins at page 166. We may consider a document submitted by the movement that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint  And I think these two exhibits would fall into that category. So I think the question, Your Honor, is if they were to refile this tomorrow without exhibits B and C, I think we would argue that the court should consider exhibits B and C. If they were to refile tomorrow, not include exhibits B and C, and change the complaint to have some other damages, not this $2,900,000, not this precise dollar amount, and explain in some other way how it's something that's not barred by the contract, then we'd have to take it on its face and evaluate it. In paragraph 53 of the complaint, they plead that they have met all the conditions precedent, right? But, I mean, I guess I think that that's like saying that they've, you know, I'm not sure what particular condition precedent is in play here. Well, all. That is, they've given written notice would be one condition precedent, wouldn't it? I don't know that that's a condition precedent. I think there's a provision in section 26 of the subcontract that says if you want to submit a claim under the subcontract, you have to do so, and in default of such notice, the claim is waived. Mr. McNamara, Judge Floyd, Rule 9c says about the pleading, all you've got to do is plead that you've met the conditions precedent. On the other hand, if the party wants to deny that the conditions precedent were met, they have to plead the particularity. So the general plea that they got in their pleading seems to meet 9c. I think that that would meet 9c if the issue is whether they comply with the condition precedent, you know, if there was some, you know, administrative remedy that they had to exhaust, that sort of thing. But I don't think anything in section 26 of the subcontract characterizes compliance with that as a condition precedent. And I don't think, and if you read Twombly and Iqbal, I don't think Rule 9c is meant to supplant the obligation that they plead under the contract that they're entitled to it. I mean, in the old days when I started practice, you'd file a one-page breach of contract complaint saying I complied with the contract, you didn't, end of story, and that was sufficient. But after Twombly and Iqbal, I don't think you could do that. And I don't think the 9c that says that, you know, you can generically refer to conditions precedent takes away from Twombly and Iqbal's requirement that you have to plead the details of the contract and how you're entitled to recovery under it. Well, do you have any case law that deals with language like we've complied with all the conditions present in the contract and a finding by the court that that doesn't comply with Twombly and Iqbal? Your Honor, I don't. There's my notice. Although I think I've answered the question. I haven't drilled down to that point, I'll confess. Okay. Judge Floyd, do you have any further questions? No, ma'am. Judge King? No, ma'am. Okay. Thank you very much. I guess we have a little bit of time for rebuttal. Thank you, Your Honor. The argument that the notice requirement in the contract is not a condition precedent, you know, I think it fails on its face. In their pleading, I apologize, in their brief, the appellees argue that it's a waiver because of the way that it's couched in the subcontract. But, you know, if you really look at it, every failure to comply with a waiver, I'm sorry, every failure to comply with the condition precedent results in a waiver. So it's really two sides of the same coin. The notice is a condition precedent and we pled the condition precedent in accordance with the requirements of the federal rules. Whether or not the notice, as a matter of fact, was sufficient, whether it was written, whether it was oral, whether it was timely, whether it contained all the right information in it, that's not something that is considered at this stage. That's something that a finder of fact needs to consider at the later stage in the game. But at this point, I think Your Honor is correct in that, you know, we've pled as required by the federal rules and, you know, this case should not have been dismissed based on the factual findings that the court made. And even though the court didn't come straight out and say I find that X, Y, and Z, the implication of the dismissal is, you know, shows that the court did make factual findings. The court found that the REA was a delay claim. The court found that Arrow failed to provide written notice. You know, we believe that that was inappropriate and that that was an error. You know, Judge Floyd asked about the sui sponte dismissal of the Miller Act claim and I believe he's 100% correct. We didn't receive any notice. Hartford didn't receive any notice. And Harper didn't receive any notice either. You know, the appellees sort of grasped it. Why didn't you jump up there and tell the judge that they had made a motion under 12B6? That's an excellent question, Your Honor. And the reason is because in law school I was always taught that when the judge is confused about the pleadings and, you know, says something, you know, it's probably better not to correct the judge, especially when it doesn't matter. The lawyers are supposed to help the court out. I mean, that may have alleviated the necessity of this appeal at this stage. I understand that. To be quite frank, Your Honor, I was unaware that the court was even, you know, because it was not at issue. Counsel for Hartford got up and argued, and he didn't want to ask the court to dismiss the case. He addressed the exhibit prevails rule in his argument. You know, we were caught off guard, and, you know, it wasn't... As far as you're concerned, Hartford's counsel got something they didn't even want. And that is true, Your Honor.  It was Christmas in July for Hartford's counsel. But at the end of the day, at the end of the day, the dismissal was inappropriate. And even if there was notice, the dismissal of our Miller Act claim against Hartford was inappropriate because, you know, Hartford's liability is not derivative of Harper's liability. The surety's liability is not derivative of its principal's liability under the Miller Act. And the court or appellees referred to the Woodington case as standing for the proposition that perhaps it does. But a lot of courts have analyzed Woodington and have reached different conclusions. So Judge Ellis in Kitchens-to-Go took a look at Woodington, and he said that the court looked to the underlying contract not to analyze the contractual liability of the principal, and I'm quoting here, but to determine whether the sums justly due could be measured in terms of profits as opposed to the cost of labor and materials. In Tusco, which is another case that we cite out of the District Court of Maryland, it says the same thing. And Judge Hollander in Arrow Electrical case, another case involving Arrow, said the exact same thing. Unlike the clauses at issue in Woodington and Taylor Construction, which affect how compensation was to be measured, the clauses at issue here would affect Arrow's right to recovery. So Woodington does not stand for the proposition that the principal's liability is measured. The surety's liability is measured by the principal's liability. We cited a number of cases. My Steel is the seminal one that says quite the opposite. It says that under the Miller Act, the surety's liability is not determined with respect to the principal's liability. As a matter of fact, the Fourth Circuit and Moore Brothers reached a similar conclusion on a private bond case. And in that case, the court held that the surety was not entitled to rely on its principal's no damage for delay clause because to allow the surety to rely on the principal's no damage for delay clause and take advantage of that would defeat the very purpose of the payment bond. So that's in a private case. That's in a non-Miller Act case. The Fourth Circuit held that the principal's liability and the surety's liability are not necessarily coextensive, especially when it goes to defeat the purpose of the payment bond. In the Miller Act, the case law expressly says that. And even if the case law didn't say that, the purpose of the Miller Act payment bond is to pay the subcontractor for the labor materials rendered to the project. And if the surety can simply get around that, the requirements of the Miller Act, by cleverly drafting a contract to include a pay if paid clause or a no damage for delay clause, then the whole purpose of the Miller Act, which is to be liberally construed in favor of subcontractors, is going to be undone. Well, thank you very much, Mr. Rummins and Mr. McNamara. We will take the case under advisement and ask our clerk to adjourn for a brief time while we go to our next case. Thank you, Your Honor. Thank you, Your Honor. The court will take a brief break before hearing the next case.
judges: Diana Gribbon Motz, Robert B. King, Henry F. Floyd